Vernon L. **CRUMPLER, Jr., Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary, Health, Education & Welfare, Defendant.**

**Civ. A. No. 77–0221–R.**

United States District Court, E. D. Virginia, Richmond Division.

Jan. 5, 1978.

Thomas F. Digges, Robert B. Ritchie, Richmond, Va., for plaintiff.

Jonathan C. Rose, Sp. Asst. U. S. Atty., Alexandria, Va., Robert W. Jaspen, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Vernon L. Crumpler, Jr., brings this action to recover his "father's social security insurance benefits" from the defendant, Joseph A. Califano, Jr., Secretary of Health, Education and Welfare (hereinafter "the Secretary"). Jurisdiction is vested in the Court by virtue of the jurisdictional provision of the Social Security Act, 42 U.S.C. § 405(g). Both parties have moved for summary judgment and the matter is ripe for disposition. The record reveals the following uncontradicted facts:

On July 27, 1962 plaintiff married one Mary G. Beasley. Two children, Mary Heather and Vernon Lee, III, were born of this union. On September 27, 1973 plaintiff's wife died as a result of an automobile accident. Thereafter, on October 5, 1973, plaintiff applied in writing for a lump sum death benefit and surviving child's insurance benefits premised on the earnings record of his deceased wife. These benefits were paid.

The record further reveals that on that same day, October 5, 1973, plaintiff orally applied for benefits under 42 U.S.C. § 402(g). This application was denied orally after the Social Security office explained to plaintiff that the Secretary was paying such benefits only to widows, not to widowers.

On December 1, 1973, plaintiff married one Marie L. Norship, a widow who had in her care a minor child of her deceased husband. Her child was entitled to child's insurance benefits under social security and she herself was receiving mother's insurance benefits on her former husband's earnings record. Thereafter, plaintiff filed for divorce from Marie Norship. A decree of divorce from bed and board was entered on March 7, 1975, which was ultimately merged into an absolute decree of divorce on February 13, 1976.

On April 11, 1975, shortly after the entry of the bed and board decree, plaintiff filed a written application for "father's benefits" under 42 U.S.C. § 402(g). This application was denied by the Secretary initially and upon reconsideration on the grounds that plaintiff was married at the time of application. See 20 C.F.R. § 404.335a(a)(3). Plaintiff thereafter requested a hearing before an Administrative Law Judge of the Bureau of Hearings and Appeals. The Administrative Law Judge found that plaintiff was entitled to father's benefits under 42 U.S.C. § 402(g) on the basis of the oral application which plaintiff had made on October 5, 1973. The Appeals Council reviewed the decision *sua sponte* and determined that plaintiff was entitled to father's benefits but that such benefits had not become effective until February 1976, the month in which plaintiff's divorce from Marie Norship became final. On February 18, 1977 plaintiff was advised that the Appeals Council's decision was the Secretary's final decision. Thereafter, he commenced this action, seeking judicial review of the Secretary's determination.

The sole issue before this Court is whether plaintiff is entitled to father's insurance benefits for a period prior to February 1976. More specifically, the question is whether the decision of the Supreme Court of the United States in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), must be given retroactive effect resulting in plaintiff's entitlement to benefits from the time of his initial application on October 5, 1973.

In *Wiesenfeld v. Weinberger,* 367 F.Supp. 981 (D.N.J.1973) (three judge court), plaintiff was Stephen Wiesenfeld, a father whose wife had died in childbirth leaving a minor child in his care. After he had orally applied for father's benefits and these benefits had been orally denied, Mr. Wiesenfeld challenged § 402(g) of the Act on equal protection grounds because under that section widows but not widowers could collect benefits. The district court agreed with Mr. Wiesenfeld, finding § 402(g) to be unconstitutional discrimination against women who had successfully gained employment

and against men and children who had lost their wives and mothers. On March 19, 1975, the district court's decision was affirmed by the United States Supreme Court. The Supreme Court stated that the gender-based distinction mandated by 42 U.S.C. § 402(g) impermissibly discriminated against female wage earners because they were required to pay social security taxes, but were afforded less protection for their survivors than male wage earners.

The question of retroactivity was not raised during the proceedings before the district court, nor did the Supreme Court address that issue. However, the Social Security Administration afforded retroactivity to Mr. Wiesenfeld's application to comply with the district court's order. Benefits were paid retroactively to the date of his wife's death, based upon Mr. Wiesenfeld's oral application. Since neither the district court nor the Supreme Court had expressly required its decision to be applied retroactively to other individuals applying for father's benefits in the absence of a certified class, however, a determination was made by the Social Security Administration to pay such individuals only for months beginning with March 1975, the month in which the Supreme Court affirmed the *Wiesenfeld* case. That decision was embodied in the Secretary's regulation found at 20 C.F.R. § 404.335a, which provides:

"§ 404.335a Father's insurance benefits; conditions of entitlement.

(a) General. The widower (as defined in § 404.1107) of an individual who died fully or currently insured is entitled to father's insurance benefits for *the first month after February 1975* in which he:

(1) Has filed application for father's insurance benefits; and

(2) At the time of filing such application had in his care (see §§ 404.342–404.349) a child of such individual entitled to child's insurance benefits (see paragraph (b) of this section); and

(3) Is not married; and

(4) Is not entitled to a widower's insurance benefit; and

(5) Is not entitled to old-age insurance benefits, or is entitled to an old-age insurance benefit which is less than three-fourths of the primary insurance amount of such individual." [Emphasis supplied.]

The controlling considerations as to the appropriateness of applying a judicial decision retroactively were articulated by the Supreme Court in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). *Chevron* was an action brought under the Outer Continental Shelf Lands Act ("the Lands Act") for personal injuries sustained on an off shore oil drilling rig. The Supreme Court was required to consider whether its earlier decision in *Rodrigue v. Aetna Casualty & Surety Co.,* 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), which had held that personal injury actions under the "Lands Act" were governed by state law and not by admiralty law, should be given retroactive effect. In holding that *Rodrigue* should not be applied retroactively, the Supreme Court set forth the appropriate guidelines for deciding such issues:

"In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principal of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity . . .'" 404 U.S. at 106–07, 92 S.Ct. at 355 [citations omitted].

■ Applying these guidelines to the instant case, the Court concludes that *Weinberger v. Wiesenfeld* must be given retroactive effect.

First: Far from establishing a new principal of law, *Wiesenfeld* closely tracked the Supreme Court's 1973 decision in *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). The *Wiesenfeld* Court's language indicates that invalidation of § 402(g) was clearly foreshadowed by *Frontiero*:

"The gender-based distinction made by § 402(g) is indistinguishable from that invalidated in *Frontiero v. Richardson* . . . ." 420 U.S. at 642–43, 95 S.Ct. at 1230.

. . . . .

"Section 402(g) clearly operates, as did the statutes invalidated by our judgment in *Frontiero,* to deprive women of protection for their families which men receive as a result of their employment. Indeed, the classification here is in some ways more pernicious." 420 U.S. at 645, 95 S.Ct. at 1232.

. . . . .

"Since the gender-based classification of § 402(g) cannot be explained as an attempt to provide for the special problems of women, it is indistinguishable from the classification held invalid in *Frontiero*." 420 U.S. at 653, 95 S.Ct. at 1236.

Thus, *Weinberger v. Wiesenfeld* did not, in this Court's view, "establish a new principle of law."

Second: The prior history of § 402(g) indicates that its purpose and effect will be furthered by giving the *Wiesenfeld* decision retroactive effect. In deciding *Wiesenfeld,* the Supreme Court stated that "the purpose behind § 402(g) is to provide children deprived of one parent with the opportunity for the personal attention of the other . . . ." 420 U.S. at 648–49, 95 S.Ct. at 1233. The Supreme Court also quoted from a report by the 1971 Advisory Council on Social Security which explained that the

policy behind § 402(g) was "to allow a woman who is left with the care of the children the *choice* of whether to stay at home to care for the children or to work." 420 U.S. at 649, 95 S.Ct. at 1234 (emphasis by the Supreme Court). In light of these policies, the Court concluded that the gender-based distinction in § 402(g) was "entirely irrational":

> "The classification discriminates among surviving children solely on the basis of the sex of the surviving parent. Even in the typical family ·hypothesized by the Act, in which the husband is supporting the family and the mother is caring for the children, this result makes no sense. The fact that a man is working while there is a wife at home does not mean that he would, or should be required to, continue to work if his wife dies. It is no less important for a child to be cared for by its sole surviving parent when that parent is male rather than female." 420 U.S. at 651–52, 95 S.Ct. at 1235.

Undeniably, the purposes of § 402(g) will be furthered by giving *Wiesenfeld* retroactive operation, for the plaintiff in the instant case will then be afforded "the *choice* whether to stay at home' to care for the children or to work."

Third: Retroactive application of *Wiesenfeld* will not "produce substantial inequitable results." While the Court takes judicial notice of the fact that the financial resources of the Social Security Administration are indeed strained, the Court believes that the retroactive application of *Wiesenfeld* will have a relatively small impact on those resources. In the Court's view, *Wiesenfeld* can be given retroactive effect only as far back as *Frontiero v. Richardson*, which was decided on May 14, 1973, less than two years prior to the decision in *Wiesenfeld*. Prior to *Frontiero*, the *Wiesenfeld* decision was not "clearly foreshadowed" and it would thus be inappropriate to afford retroactive effect to *Wiesenfeld* prior to the date of the *Frontiero* decision.

Thus, the Court's holding that *Wiesenfeld* must be applied retroactively exposes the Social Security Administration to retroactive claims only for applications made by widowers during the relatively short period between *Frontiero* and *Wiesenfeld.* Even within that short time frame, the Secretary's liability to pay on claims such as plaintiff's will be limited by the remaining strictures of 20 C.F.R. § 404.335a, heretofore quoted. Finally, since this is not a class action, the Secretary's liability on retroactive § 402(g) claims will not be automatic but will be limited to those claimants who pursue their claims on their own initiative. This is not the sort of exposure that will endanger the resources of the Social Security Administration. The Secretary's unsupported contention that the retroactive operation of *Wiesenfeld* will impair his ability to make current social security payments is, in the Court's view, unconvincing. *See Jimenez v. Weinberger,* 417 U.S. 628, 633, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974).

In summary, all three of the factors set forth in *Chevron* favor retroactive application of *Wiesenfeld.* The Court therefore concludes that the Secretary's regulation found at 20 C.F.R. § 404.335a violates the Constitution to the extent that it effectively prohibits retroactive application of *Wiesenfeld.*

The Secretary has requested the Court to remand the instant case to him to determine the appropriate period of benefits in the event that retroactivity is afforded to *Wiesenfeld.* The Court declines this invitation. No material issue of fact is in dispute. The relevant statutory language explicitly authorizes the Court to enter a judgment "with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g), and the United States Court of Appeals for the Fourth Circuit has pointed out that § 405(g) contemplates remand only "on good cause shown." *Taylor v. Weinberger,* 512 F.2d 664, 669 (1975). In denying the Secretary's request for remand in *Taylor,* the Court said: "We think the Secretary has not shown sufficient good cause to prolong the litigation." The instant case stands on the same footing.

Determining the appropriate period of benefits in the case at bar is not a

difficult task. Plaintiff's hearing examiner found that plaintiff applied orally for father's benefits on October 5, 1973. This finding is supported by substantial evidence and puts plaintiff in precisely the same situation as the plaintiff in *Wiesenfeld*. In that case, despite the absence of any written records, the district court found that the claimant had applied orally for benefits under § 402(g) and was informed orally that such benefits were payable only to women. *Wiesenfeld v. Weinberger*, 367 F.Supp. at 984–85 & n.5. The district court in that case directed the Secretary "to make payments to the plaintiff for such periods during which he would have been qualified to receive benefits but for Section 402(g) herein held unconstitutional." 367 F.Supp. at 991. A similar instruction is appropriate in the instant case, for it is undisputed that plaintiff would have qualified for father's benefits when he applied in October 1973 if § 402(g) had not then been restricted to women. Applying *Wiesenfeld* retroactively, plaintiff is entitled to all of the benefits which he would have received had his application for § 402(g) benefits been honored in October 1973.

■ Plaintiff's remarriage on December 1, 1973 to Marie Norship, then a widow receiving mother's benefits under § 402(g), does not affect plaintiff's entitlement to benefits because the Secretary's regulation at 20 C.F.R. § 404.336a(b)(1) provides:

> "A widower's entitlement to father's insurance benefits is not terminated by reason of his remarriage to a woman entitled to old-age, wife's, widow's, mother's, parent's, or disability insurance benefits . . . ."

Plaintiff was divorced from Marie Norship in February 1976. As of that month the Secretary began paying father's benefits to plaintiff, and plaintiff is not seeking additional benefits from that time forward. Thus, plaintiff is entitled to "father's benefits" under § 402(g) for the period running from October 1973 through January 1976. The appropriate component of the Social Security Administration is fully capable of determining the precise amount of these benefits and forwarding them to plaintiff in a lump sum.

An appropriate order shall issue.