**Francis A. CASH, Plaintiff,**

**v.**

**Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 78–0042–A.**

United States District Court, W. D. Virginia.

March 13, 1979.

Francis A. Cash, pro se.

Paul R. Thomson, Jr., U. S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff has filed this action challenging the final decision of the Secretary of Health, Education, and Welfare regarding plaintiff's claim for widower's insurance benefits under the Social Security Act, as amended, 42 U.S.C. § 402(f)(1). Jurisdiction of this court is asserted pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). The only issue in this case is whether the decision of the United States Supreme Court in *Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977), is to be given retroactive effect.

## STATEMENT OF FACTS

In *Califano v. Goldfarb, supra,* the Supreme Court held that the dependency requirement for individuals otherwise qualifying for widower's insurance benefits was unconstitutional given the purpose of the Act, the absence of such a requirement for claimants seeking widow's benefits, and the absence of any justifiable basis for the distinction. *Goldfarb* was decided on March 2, 1977. The Social Security Administration's Claims Manual provides for only prospective application of the requirements of *Goldfarb.*

Plaintiff's wife, Elizabeth W. Cash, died on December 17, 1975. Mr. Cash filed application for widower's insurance benefits on October 21, 1976. While he originally alleged requisite dependency, there is now no question but that Mr. Cash was never dependent on Mrs. Cash within the meaning of the Act. Mr. Cash's claim was originally denied because he was found to be entitled to greater benefits on the basis of his own social security retirement eligibility. *See* 42 U.S.C. § 402(f)(1)(E). Mr. Cash requested reconsideration as to the period between December, 1975, and June, 1976, the time between his wife's death and the beginning of his social security retirement. However, the claim was again denied. Mr. Cash pursued his claim to the hearing level where it was denied by an Administrative Law Judge. The Law Judge's opinion was adopted by the Social Security Administra-

tion's Appeals Council as the final decision of the Secretary. The Secretary concedes that Mr. Cash met all conditions for entitlement other than for dependency on his wife at the time of her death. *See* 42 U.S.C. § 402(f)(1)(D). However, the Law Judge denied entitlement, noting that the decision in *Goldfarb* made no provision for retroactive application.

Upon appeal of the Secretary's final decision to this court, the Secretary filed a motion for summary judgment. Briefly stated, the Secretary makes two arguments. First, the Secretary argues that this court is without jurisdiction to consider a claim for retroactive benefits inasmuch as no waiver of sovereign immunity has been made by Congress in such circumstances. In the alternative, the Secretary urges that this matter does not fall into the category of cases in which retroactive relief is appropriate. The court will proceed to consider these arguments in turn.

## SOVEREIGN IMMUNITY

The court is unable to conclude that it is without jurisdiction to provide appropriate relief in this case. As a general matter, monetary damages may not be had against the United States unless Congress has specifically waived immunity from such damages. *See United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed. 14 (1976). However, exceptions may exist when the suit is brought against a government official, and the official's actions were either *ultra vires* or performed pursuant to an unconstitutional statute or in an unconstitutional manner. *Dugan v. Rank,* 372 U.S. 609, 621–22, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 691 n. 11, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). This exception has been held applicable in actions arising under 42 U.S.C. § 405(g) of the Social Security Act. *Rhodes v. Weinberger,* 388 F.Supp. 437, 441 (E.D.Pa. 1975). Even if a case otherwise falls within this excepted category, a claim for retroactive award of benefits may still fail if it would result in

the imposition of an intolerable burden on the government. *De Lao v. Califano,* 560 F.2d 1384, 1391 (9th Cir. 1977). As to the instant case, there can be no doubt that benefits were denied solely on the basis of a statutory provision which had already been held to be unconstitutional. However, Mr. Cash was seeking benefits for a period of time predating the decision in *Goldfarb.* If the award of benefits would operate to impose an intolerable burden on the government, the doctrine of sovereign immunity is properly invoked. *De Lao v. Califano, supra.*

█ It must be remembered that plaintiff's claim was still pending at the time of the decision in *Goldfarb.* The Secretary had notice that the dependency requirement for widowers was unconstitutional. Were it not for the timing of the decision in *Goldfarb,* Mr. Cash's claim could have been the lead case. The Secretary did not raise the question of immunity from retroactive benefits at any time at the administrative level. Indeed, the final decision of the Secretary is based entirely on the ruling that *Goldfarb* is not retroactive. The court is unable to discern any appreciable burden which would be imposed on either the administrative system or the government's financial resources if the Secretary were required to apply the rationale of *Goldfarb* to a case which had not been finalized as of the date of that decision.[1] The limited extent of the Secretary's burden must be measured against the total deprivation to be suffered by Mr. Cash should his claim be barred by virtue of the doctrine of sovereign immunity. As noted by the United States Court of Appeals for the Ninth Circuit in *DeLao v. Califano, supra,* at 1391, the extent of the government's burden must be measured against the private harm. Unlike the plaintiffs in *DeLao,* Mr. Cash will never again have the opportunity to pursue his claim for benefits. The court finds the potential harm to the individual

should the sovereign immunity doctrine bar his claim to outweigh the potential burden on the government should the opposite result prevail. In short, the court must determine that this case falls within the exception involving action taken under unconstitutional statutes. Indeed, there have been recent situations in which retroactive relief has been granted when the avenue to relief is premised on the Supreme Court's overturning of an unconstitutional statutory provision. *See Hurvich v. Califano,* 457 F.Supp. 760 (N.D.Cal. 1978); *Crumpler v. Califano,* 443 F.Supp. 342 (E.D.Va. 1978). In such cases, the claimants were found to have both a right and a remedy.

## RETROACTIVITY OF *GOLDFARB*

The Secretary argues that the decision in *Califano v. Goldfarb, supra,* should be given only prospective application. The court must hold to the contrary. The decision as to retroactive application of new case law is never a simple one in that the Constitution itself neither prohibits nor requires that changes in the law be applied retroactively. *Linkletter v. Walker,* 381 U.S. 618, 629 (1965). Of course, the doctrine of nonretroactivity was not generally accepted at common law. The growth of the doctrine of nonretroactivity is a relatively modern development and has paralleled the evolving notion of law as a dynamic institution. It is basically an equitable doctrine, structured so as to account for various reliance interests. While the final decision of the Secretary relies on the fact that the opinion in *Goldfarb* is silent as to retroactivity, this court is unaware of any authority for the proposition that the Supreme Court's silence as to the question will serve to create a presumption or inference of nonretroactive design. Indeed, in the vast majority of Supreme Court cases providing for nonretroactivity, the Court has found it necessary to decide the question in a case considered

---

1. The timeliness of Mr. Cash's claim must be deemed an important factor. Even in the sequel to the Supreme Court decision in *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), which clearly establishes a

new principle of law, benefits were awarded retroactively to the date of original application for benefits. *Jimenez v. Weinberger,* 523 F.2d 689 (7th Cir. 1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976).

subsequent to the decision that is to be applied nonretroactively.

The appropriate guidelines for deciding the question were summarized by the Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), wherein the court stated as follows:

> In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principal of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity . . . .' 404 U.S. at 106–07, 92 S.Ct. at 355 [citations omitted].

As to the first relevant element, the court must consider whether the Supreme Court decision in *Goldfarb* was foreshadowed by earlier decisions. In a broad sense, *Goldfarb* reaches numerous statutory presumptions and inferences of dependency premised on gender based distinctions. While the Secretary attempts to distinguish *Goldfarb* on the basis of the type of benefits program involved, there can be no doubt that the unconstitutionality of statutory presumptions of dependency based solely on gender was established many months prior to *Goldfarb*. The leading case in this area is certainly *Frontiero v. Richardson* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), in which the Court found an invidious discrimination in statutes that presumed spouses of male members of the armed services to be dependents for the purpose of obtaining increased quarters allowances and medical benefits, but required spouses of female members to prove they were in fact dependent for over one-half of their support in order to obtain the same benefits. Of course, it could be argued that as to social security benefits schemes, the statutory purpose is different from that considered in *Frontiero*. It is also possible that the basis for distinction in social security programs could be more justifiable. However, these arguments were undercut by the decision in *Weinberger v. Wiesenfeld*, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). In *Wiesenfeld*, the court found that the statutory provision for award of survivor's benefits to a widower only for minor children in his care was unconstitutional in that the statute permitted a widow to recover benefits both for herself and for minor children. Unlike the situations in *Frontiero, Goldfarb*, and the instant case, the male applicant in *Wiesenfeld* was faced with a conclusive presumption of ineligibility. Nevertheless, the *Wiesenfeld* Court indicated that invalidation of the social security survivor's benefits provision was clearly foreshadowed by *Frontiero*:

> The gender-based distinction . . . is indistinguishable from that invalidated in *Frontiero v. Richardson* . . . . 420 U.S. at 642–43, 95 S.Ct. at 1230. [citation omitted].

Thus, the justification for the gender based distinction was found to be no greater in the social security situation than in the situation of *Frontiero*. The same analogy to *Frontiero* was made in the plurality opinion of *Goldfarb*. 430 U.S. at 210–12, 97 S.Ct. 1021.

As to the purposes of the statutory schemes considered in *Frontiero, Wiesenfeld*, and *Goldfarb*, the court is also unable to discern any controlling distinction. The *Wiesenfeld* Court commented as follows:

> Section 402(g) [survivor's benefits] clearly operates, as did the statutes invalidated by our judgment in *Frontiero*, to deprive women of protection for their

families which men receive as a result of their employment. 420 U.S. at 645, 95 S.Ct. at 1232.

. . . . .

Since the gender-based classification of § 402(g) cannot be explained as an attempt to provide for the special problems of women, it is indistinguishable from the classification held invalid in *Frontiero*. 420 U.S. at 653, 95 S.Ct. at 1236.

In the plurality opinion of *Goldfarb*, Mr. Justice Brennan found that the statutory purposes considered in *Frontiero* and *Wiesenfeld* were not so dissimilar from that of 42 U.S.C. § 402(f) as to compel a different result. 430 U.S. at 212–17, 97 S.Ct. 1021.

The Secretary relies on the fact that the decision of *Goldfarb* was by less than a majority opinion.[2] However, even in dissent, Mr. Justice Rehnquist noted that "one cannot say that there is no support in our cases for the result reached by the Court." 430 U.S. at 224–25, 97 S.Ct. at 1036. To the extent of the *Goldfarb* ruling that statutory schemes which assume the dependency of female spouses and not male spouses effect unconstitutional discrimination against female wage earners, this court must conclude that *Goldfarb* was sufficiently foreshadowed and that the decision did not establish a totally new principle of law.

■ The second factor to be considered under *Chevron* is whether retroactive application will promote the purpose of *Goldfarb* and the underlying statutory scheme. The statutory purpose to be considered must be that of replacement of lost support and assistance. *Goldfarb* serves to insure that a wife will receive equal value for her labor as would her husband should he predecease her. That "equal value" finds form in monetary benefits paid to a surviving spouse as a result of contributions made by a deceased spouse during that individual's lifetime. Since a widow would receive such benefits regardless of actual dependency, it must be assumed that such benefits should be paid to a widower in order to insure that his wife does in fact receive "equal value" for her wage earner's contributions. Only in this way can the purpose of *Goldfarb* be promoted. Stated in more practical terms, Mrs. Cash's employment undoubtedly served to provide pecuniary advantage to both her and Mr. Cash. Retroactive application of *Goldfarb* cannot undo the loss of that pecuniary advantage on a monthly basis. *See Rothstein v. Wyman*, 467 F.2d 226 (2nd Cir. 1972). However, retroactive application will still serve to replace that pecuniary advantage. Mr. Cash might direct a back award of benefits to the retirement of a house mortgage, to a car loan, or to any number of other financial burdens shared by him and his wife during their joint lifetimes. In any case, retroactive application would serve the purpose of replacement of pecuniary advantage as contemplated by the statute. More importantly, retroactive application would best serve the *Goldfarb* purpose of according "equal value" to past contributions of female wage earners.

■ Finally, the court must consider whether a retroactive application of *Goldfarb* would produce substantial inequitable results. It must be remembered that this court has not been called upon to adjudicate the rights of any class or group of widowers. Rather, this court is concerned solely with a single claimant whose claim was still pending at the time of the decision in *Goldfarb*. The court can conceive of no substantial inequitable results that would prevail should the rationale of *Goldfarb* be extended to a widower's claim which is not otherwise barred under principles of administrative or judicial finality. Obviously, there would be no great administrative burden should the Secretary be required to view such a claim in a new light. The potential for a substantial financial burden is slight, especially when compared to the amount of past contributions of wage earning wives. While the court is without the statistics and

---

**2.** Mr. Justice Brennan produced the plurality opinion in which Justices White, Marshall, and Powell joined. Mr. Justice Stevens filed an opinion concurring in the judgment. Mr. Justice Rehnquist filed a dissenting opinion in which Chief Justice Burger and Justices Stewart and Blackmun joined.

appropriate mortality tables to make a definitive appraisal, it would seem that numerous considerations would operate so as to limit the financial depletion. For example, due to the intervention of his old age retirement eligibility, Mr. Cash's claim is limited to a period of approximately six months. This circumstance is probably not overly unusual. As to the other end of the possible period of retroactive entitlement, the court notes that any award could not extend back beyond the date of *Frontiero*, the case in which the new principle of law was first enunciated. *See Crumpler v. Califano*, 443 F.Supp. 342 (E.D.Va. 1978). Finally, it is noted that at least two courts have found it necessary to apply *Weinberger v. Wiesenfeld, supra,* retroactively. *Crumpler v. Califano, supra; Hurvich v. Califano,* 457 F.Supp. 760 (N.D.Cal. 1978). Both courts found the potential financial burden to be slight. Similarly, this court is unable to conclude that a retroactive application of *Goldfarb* to Mr. Cash's case would result in an inequitable burden, financial or otherwise. *See also Jimenez v. Weinberger,* 523 F.2d 689, 704 (7th Cir. 1975), *cert. denied* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976).

## CONCLUSION

The court has found that the circumstances of this case bring it within the exception to the doctrine of sovereign immunity. As a matter of fairness, it would seem that once the Secretary has been notified that a statutory provision does violence to rights protected under the Constitution, the Secretary should take all reasonable steps to insure that the constitutional deprivation is not perpetrated in the cases still under his control. Furthermore, the court has found that the standards for nonretroactivity, as articulated in *Chevron Oil Co. v. Huson, supra,* have not been met in this case. All factors considered, the equities weigh against the Secretary's attempt to rely on an unconstitutional statutory provision in the denial of Mr. Cash's claim. An appropriate judgment and order will be entered this day.